**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Robert Roland Gilbert

    v.                          Civil No. 14-cv-553-LM
                                     Opinion No. 2014 DNH 124
Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Robert Gilbert moves to reverse the Acting Commissioner's decision to deny his application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, the matter is remanded to the Acting Commissioner for further proceedings consistent with this order.

**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of

the Commissioner of Social Security as to any fact, if
supported by substantial evidence, shall be conclusive
. . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of
social security disability benefits unless 'the [Acting
Commissioner] has committed a legal or factual error in
evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS,
76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490
U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting
Commissioner's findings of fact be supported by substantial
evidence, "[t]he substantial evidence test applies not only to
findings of basic evidentiary facts, but also to inferences and
conclusions drawn from such facts." Alexandrou v. Sullivan, 764
F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,
360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial
evidence is 'more than [a] mere scintilla.  It means such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d
594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the
[Acting Commissioner] to determine issues of credibility and to
draw inferences from the record evidence.  Indeed, the
resolution of conflicts in the evidence is for the [Acting

Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (citations omitted). Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts, document no. 9. That statement is part of the court's record and will be summarized here, rather than repeated in full.

Gilbert claims that he became disabled on January 25, 2006.[1] He reports that in August of 2005, he injured his back while lifting a manhole cover at work.[2] For the purposes of

---

[1] In his decision, the ALJ stated that Gilbert was "alleging disability since October 1, 2004." Administrative Transcript 15. But, at his hearing, Gilbert indicated that he wanted to amend the onset date to January 25, 2006. Id. at 36.

[2] He settled a workers' compensation claim in 2007 or 2008.

eligibility for disability insurance benefits, Gilbert was last insured on March 31, 2008.  At the time of the incident with the manhole cover, Gilbert was working as a construction laborer, a job that is classified by the Dictionary of Occupational Titles at the "heavy" exertional level.  His relevant occupational history also includes employment: (1) in shipping and receiving, and as a door builder, both classified as "medium" work; (2) as a sink maker, classified as "very heavy" work; and (3) as a painting supervisor, which was "light" work, as he performed it.

In October of 2005, Gilbert was diagnosed with a severe disc injury with disc deteriorations.  That diagnosis was based on a radiological examination of his lumbar spine showing "severe degenerative changes at L5-S1 with complete disc collapse in the end plate with degenerative changes as well." Administrative Transcript (hereinafter "Tr.") 388.

In September of 2005, Gilbert saw Dr. David Ouyang for an annual physical examination and complaints of low back pain. Gilbert saw Dr. Ouyang once more in September of 2005, twice in November of 2005 and again on January 9, 2006.  On that date, Dr. Ouyang completed a New Hampshire Workers' Compensation Medical Form in which he opined that Gilbert could return to full-time work with modifications.  Those modifications were reflected in Dr. Ouyang's findings that Gilbert could: (1)

4

perform fine motor skills without restriction; (2) frequently drive; (3) occasionally kneel, squat, stand, walk, sit, and reach; and (4) not bend or climb.  Dr. Ouyang also stated that Gilbert could only lift/carry five to ten pounds, but could do so frequently.

Gilbert continued to treat with Dr. Ouyang from January 25 2006, through June 4, 2007, and saw him pretty much monthly during that period.  At each visit, Dr. Ouyang performed a physical examination.  Moreover, between January 25, 2006, and March 22, 2007, Dr. Ouyang completed 16 more workers' compensation medical forms in which he indicated that Gilbert could not return to work.

In a letter dated April 10, 2006, Dr. Ouyang had this to say:

> Please be informed that ROBERT R GILBERT is under my care for medical treatment and has been seen by an Orthopedic Spine Specialist – he has been found to have surgical disease in his back and is pending surgery.  I do believe this is a result of work injury and I strongly believe [Gilbert] deserves worker's compensation.

Tr. 352.  In a letter dated September 1, 2006, addressed to whom it may concern, Dr. Ouyang wrote:

> ROBERT R GILBERT is under my care for chronic low back pain requiring surgical Rx s/p Orthopedic Spine surgery recommendation, utilizing Titanium Disc. [Gilbert] cannot work until surgery [is] completed due to severe low back pain and surgical disease.

Tr. 744.  Dr. Ouyang expressed a similar opinion in a letter
dated January 19, 2007:

> Please be informed that ROBERT R GILBERT is under my
> care for medical treatment and has undergone
> evaluation by an Orthopedic Spine Surgeon, who feels
> Robert needs a Titanium Disc Replacement as one of his
> Lumber Discs has completely eroded.  He is unable to
> work due to his medical condition at this time until
> surgery is performed.

Tr. 739.  Gilbert had disc fusion surgery at some point in late
2011 or early 2012.

In addition to the letters authored by Dr. Ouyang, the
record also includes a letter from Dr. David Publow,
communicating the results of an independent medical examination
he performed at the request of a workers' compensation carrier.
In that letter, dated May 1, 2006, Dr. Publow devoted
considerable attention to the question of distinguishing the
effects of Gilbert's pre-existing condition from the effects of
the 2005 incident with the manhole cover.  He also offered the
following relevant opinions:

> He [Gilbert] does appear to have a full-time work
> capacity at this time, but reasonably should avoid
> prolonged bending, stooping or heavy lifting because
> of his underling degenerative disc disease.  . . .
> The amount of degeneration is significant enough that
> Mr. Gilbert probably should not be employed in the
> future as a laborer or in other activities that
> require prolonged bending, stooping or heavy lifting.

Tr. 750.

6

In June of 2010, Gilbert applied for Social Security
disability insurance benefits.  After a hearing before an ALJ,
Gilbert's claim was denied.  Among other things, the ALJ
determined that Gilbert retained the residual functional
capacity ("RFC")[3] to perform the full range of light work.[4]  The
Appeals Council remanded.  The remand order included the
following discussion:

> The Administrative Law Judge did not adequately
> consider the opinions of David Ouyang, M.D., a
> treating source.  The Administrative Law Judge
> considered Dr. Ouyang's April 10, 2006 and September
> 1, 2006 letters and found these letters only expressed
> an opinion regarding the claimant's ability to perform
> his past relevant work, and the Administrative Law
> Judge therefore found no conflict between these
> opinions and the findings in the decision . . . .
> However, the September 1, 2006 letter does not
> explicitly discuss the claimant's ability to perform
> only his past relevant work, rather it more generally
> states that the claimant is unable to work until
> surgery is completed.
>
> Furthermore, elsewhere, Dr. Ouyang provided a more
> specific opinion about the claimant's functioning,
> which was not considered by the Administrative Law
> Judge.  On January 9, 2006, Dr. Ouyang indicated the
> claimant could return to work, but only with
> modifications accommodating an ability to only
> occasionally stand, walk, or sit, among other things.
> In a number of subsequent opinions, Dr. Ouyang revised
> his opinion and suggested the claimant could not

---

[3] "Residual functional capacity" is a term of art that means
"the most [a claimant] can still do despite [her] limitations."
20 C.F.R. § 404.1545(a)(1).

[4] "Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighting up
to 10 pounds."  20 C.F.R. § 404.1567(b).

return to work, but Dr. Ouyang did later reaffirm
these prior restrictions.  The Administrative Law
Judge should further consider the opinions of Dr.
Ouyang and provide additional rationale for the weight
given to the opinions.

Tr. 149-50 (citations to the record omitted).  The remand order

concluded by directing the ALJ to:

- Give further consideration to the treating source
  opinions pursuant to the provisions of 20 CFR
  404.1527 and Social Security Rulings 96-2p and
  96-5p, and explain the weight given to such
  opinion evidence. . . .

- If warranted, give further consideration to the
  claimant's maximum residual functional capacity
  and provide appropriate rationale with specific
  references to evidence of record in support of
  the assessed limitations (20 CFR 404.1545 and
  Social Security Ruling 96-8p).

Tr. 150.

    After conducting a hearing, the ALJ issued a decision that

includes the following relevant findings of fact and conclusions

of law:

3.  Through the date last insured, the claimant had
the following severe impairment: degenerative disc
disease (20 CFR 404.1520(c)).

. . . .

4.  Through the date last insured, the claimant did
not have an impairment or combination of impairments
that met or medically equaled the severity of one of
the listed impairments in 20 CFR Part 404, Subpart P,
Appendix 1 (20 CFR 404.1520(d), 404.1525, and
404.1526).

. . . .

5.  After careful consideration of the entire record,
I find that, through the date last insured, the
claimant had the residual functional capacity to
perform light work as defined in 20 CFR 404.1567(b)
except he can bend[] and stoop only occasionally.  He
cannot perform any prolonged bending.  Due to pain,
the claimant could not perform supervisory
responsibilities and could perform only unskilled
work.  He could tolerate only brief interaction with
the public.

. . . .

6.  Through the date last insured, the claimant was
unable to perform any past relevant work (20 CFR
404.1565).

. . . .

10.  Through the date last insured, considering the
claimant's age, education, work experience, and
residual functional capacity, there were jobs that
existed in significant numbers in the national economy
that the claimant could have performed (20 CFR
404.1569 and 404.1569(a)).

Tr. 17, 18, 21.  Based upon his assessment of Gilbert's residual

functional capacity, and a hypothetical question posed to a

vocational expert that incorporated the RFC recited above, the

ALJ determined that Gilbert was able to perform the jobs of

document preparer, price marker, and cleaner.

    In addition to revising the RFC assessment from his first

decision, the ALJ gave the following explanation of the weight

he gave Dr. Ouyang's opinions:

    As for the opinion evidence, I note the opinions of
    treating physician David T. Ouyang, M.D., who wrote
    general letters throughout the period stating that the
    claimant was unable to work and was eligible for

worker's compensation.  Yet, his opinions appear to be
focused upon the claimant's inability to perform his
past relevant work, which was all at the medium or
greater exertional level.  Further, these opinions
fail to provide any function by function analysis of
the claimant's remaining abilities or limitations, and
are thus mere determinations of disability that add
little to our analysis here.  Such determinations are
also reserved to the Commissioner.  Finally, Dr.
Ouyang's evaluations regarding total disability are in
contrast to his medical notes, which consistently
indicate a normal gait, symmetrical reflexes, negative
strait leg raise testing, and normal motor and sensory
functioning.  Such consistently normal findings fail
to support the finding of total disability and are
more consistent with the opinion of Dr. David
[P]ublow, M.D., who performed an independent medical
examination in May of 2006.  Based on the evaluation,
he opined that the claimant had a full-time work
capacity, but that he should avoid prolonged bending,
stooping, and heavy lifting.  As such, the opinions of
Dr. [P]ublow are given more weight than those of Dr.
Ouyang, as his opinions are consistent with his exam
findings and also with the objective findings made by
Dr. Ouyang at other times during the period.  As such,
a capacity for a range of light exertion work has been
reflected in the residual functional capacity above.

Tr. 20-21 (citations to the record omitted).  While the ALJ

discussed the opinions in Dr. Ouyang's letters, he said nothing

about the January 9, 2006, workers' compensation medical form in

which Dr. Ouyang provided a function by function analysis of

Gilbert's abilities and limitations.

### III. Discussion

#### A. The Legal Framework

To be eligible for disability insurance benefits, a person

must: (1) be insured for such benefits; (2) not have reached

retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in this case is whether Gilbert was under a disability at any time from January 25, 2006, through March 31, 2008, the last date he was eligible for Social Security disability insurance benefits.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that he is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the [claimant] can still perform.  Arocho

12

v. Sec'y of Health & Human Servs., 670 F.2d 374, 375
(1st Cir. 1982).

Seavey, 276 F.3d at 5 (parallel citations omitted).  Finally,

> [i]n assessing a disability claim, the [Acting
> Commissioner] considers objective and subjective
> factors, including: (1) objective medical facts; (2)
> [claimant]'s subjective claims of pain and disability
> as supported by the testimony of the claimant or other
> witness; and (3) the [claimant]'s educational
> background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

### B. Gilbert's Claims

Gilbert claims that his case should be remanded because the
ALJ failed to: (1) give proper weight to Dr. Ouyang's opinions;
and (2) properly evaluate Gilbert's credibility.  Gilbert's
first argument is persuasive and dispositive.

The Appeals Council expressly directed the ALJ to give
further consideration to Dr. Ouyang's opinions, and the remand
order discussed the January 9, 2006, workers' compensation
medical form in which Dr. Ouyang opined that Gilbert could lift
and/or carry no more than five to ten pounds.  The ALJ did not
mention that opinion in his second decision, and gave no reason
for not doing so.  That opinion is especially important because
it is the only opinion that specifically addresses Gilbert's

exertional capacity, and according to that opinion, Gilbert lacked the capacity for light work, which the ALJ said he could perform.  See 20 C.F.R. § 404.1567(b) ("[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pound").  To be sure, Dr. Publow opined that Gilbert was not capable of "heavy lifting," but he offered no opinion on just how much Gilbert could lift, and there is no reason to believe that there is any correspondence between Dr. Publow's reference to "heavy lifting" and the categories used in 20 C.F.R. § 404.1567 and the Dictionary of Occupational Titles.

Gilbert rightly makes much of the ALJ's failure to address Dr. Ouyang's opinion on his limited capacity for lifting.  The Acting Commissioner responds by arguing that the ALJ had no obligation to weigh that opinion, or explain the conflict between that opinion and his RFC assessment, because that opinion covered only a 14-day period, rather than giving a longitudinal assessment of Gilbert's functioning.  Even if that argument had some persuasive value, it is not for the Acting Commissioner to make arguments in support of the ALJ's decision that the ALJ did not make.[5]  See Gurney v. Soc. Sec. Admin.

---

[5] The Acting Commissioner's argument seems suspect for several reasons.  To the extent that the January 9, 2006, opinion covers only 14 days, that is so because it was part of a

Comm'r, 880 F. Supp. 2d 174, 178 (D. Me. 2012) (citing SEC v.
Chenery Corp., 332 U.S. 194, 196 (1947)); Fortin v. Astrue, No.
10-cv-441-JL, 2011 WL 2295171, at *8 (D.N.H. May 18, 2011),
report and recommendation adopted by 2011 WL 2224771 (D.N.H.
June 7, 2011).

    While the ALJ's failure to address Dr. Ouyang's January 9,
2006, opinion is reason enough to remand this case, the court
notes two other problems with the ALJ's decision.  First, while
the ALJ found that Gilbert was capable of light work, there is
no evidence from a medical expert to support that finding.  See
Jabre v. Astrue, No. 11-cv-332-JL, 2012 WL 1216260, at *8
(D.N.H. Apr. 5, 2012), report and recommendation adopted by 2012
WL 1205866 (D.N.H. Apr. 9, 2012) ("when assessing a claimant's
RFC, '[t]he general rule is that an expert is needed to assess
the extent of functional loss") (quoting Roberts v. Barnhart, 67
F. App'x 621, 622-23 (1st Cir. 2003); citing Manso-Pizarro, 76
F.3d at 17).  That is, no medical expert has opined that Gilbert
had the RFC to lift any more than 10 pounds, and light work
requires the capacity to lift up to 20 pounds.

_____

series opinion expressed in more than a dozen more workers'
compensation medical forms that the ALJ seems not to have
considered, either.  Moreover, it is difficult to see how Dr.
Publow's single opinion could be considered superior to Dr.
Ouyang's opinions on longitudinal grounds, given that Dr. Ouyang
treated Gilbert, and provided opinions on his ability to work,
for nearly a full year after Dr. Publow rendered his opinion.

Beyond that, the ALJ's observation that the opinions from Dr. Ouyang that he did consider "appear[ed] to be focused upon [Gilbert]'s inability to perform his past relevant work," Tr. 20, is not well taken.  The Appeals Council expressly noted that "the September 1, 2006 letter does not explicitly discuss the claimant's ability to perform only his past relevant work," Tr. 149, and the ALJ's second decision provides no alternative construction of that letter.  Moreover, the ALJ's theory is substantially undercut by the January 9 opinion; if Dr. Ouyhang had been focusing only upon Gilbert's ability to perform his past relevant work, he would not have found that Gilbert was able to return to work while also finding that he had a capacity to lift no more than ten pounds, which is an exertional capacity that falls below the levels required for any of Gilbert's past relevant work.

In sum, this case must be remanded for a proper consideration of Dr. Ouyang's January 9, 2006, opinion, as well as the opinions expressed in the workers' compensation forms that Dr. Ouyang completed thereafter.

### IV. Conclusion

For the reasons given, the Acting Commissioner's motion for an order affirming her decision, document no. 8, is denied, and Gilbert's motion to reverse the decision of the Acting

16

Commissioner, document no. 7, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court shall enter judgment in accordance with this order and close the case.

       SO ORDERED.

                                 _____
                                 Landya McCafferty
                                 United States District Judge

June 16, 2015

cc:  Daniel McKenna, Esq.
     Terry L. Ollila, Esq.